KEITH ZICKUHR *et al.*, Plaintiffs-Appellees, *v.* WILLIAM M. BOWLING, Director, Department of Labor, *et al.*, Defendants-Appellants.

Second District    No. 80-822

· Opinion filed June 19, 1981.

Tyrone C. Fahner, Attorney General, of Chicago (Richard J. Puchalski, Assistant Attorney General, of counsel), for appellants.

Rolfe F. Ehrmann, of Dixon, Devine, Ray & Morin, of Dixon, for appellees.

Mr. JUSTICE VAN DEUSEN delivered the opinion of the court:

The defendant, the Department of Labor, appeals from the entry of a declaratory judgment which determined that a project financed and authorized under the Industrial Project Revenue Bond Act (Ill. Rev. Stat. 1979, ch. 24, par. 11—74—1 *et seq.*) was not a public work as defined by the Illinois prevailing wage act (Ill. Rev. Stat. 1979, ch. 48, par. 39s—1 *et seq.*).

The stipulated statement of facts submitted to the trial court revealed the following information. In May of 1979 Central Quality Industries, Inc. (Central), submitted to the city of Polo a proposed agreement between the city and Central. Under this proposed agreement, a warehouse would be built by Central as an addition to its current facilities. The agreement further provided that funding for the construction would be obtained through municipal bonds issued by the city of Polo under the Industrial Project Revenue Bond Act (hereinafter Bond Act) (Ill. Rev. Stat. 1979, ch. 24, par. 11—74—1 *et seq.*) Central also submitted to the city a proposed bond purchase agreement between the city and the proposed purchaser of the bonds, the Dixon National Bank. Shortly thereafter, the city passed a preliminary bond resolution.

By June 1, 1979, Central had entered into a contract with the plaintiff, Keith Zickuhr. Under this contract, Zickuhr was named the general

manager of the proposed construction. In August of 1979, the city and Central executed the proposed project agreement. Under the agreement, the parties agreed to comply with the statutory requirement of the Bond Act. By the end of August, the city had passed the final bond resolution, and the city and the Dixon National Bank had executed the bond purchase agreement.

The formal closing of the financing arrangement occurred on October 1, 1979. At that time, Central conveyed its real and personal property to the city for use as security. The city then leased all of the property back to Central. Under this lease, Central had the right to purchase back all the property. The city also pledged the property as security to the Dixon National Bank, and issued its bonds to the bank. The bank issued a $350,000 check to Central for construction of the warehouse. This was done pursuant to the Bond Act.

The Bond Act establishes a scheme whereby municipalities, through the issuance of bonds, may finance:

"(2) * * * in whole or in part the cost of the acquisition, purchase, construction, reconstruction, improvement, betterment or extension of any industrial project." (Ill. Rev. Stat. 1979, ch. 24, par. 11—74—4(2).)

Section 11—74—4(3) of the Act authorizes the municipality to lease the industrial project for an amount which will defray the costs of issuing the bonds and create a fund for redemption of the bonds. While legal title to the project remains in the municipality, the municipality has the power:

"(6) To sell and convey such industrial project, including without limitation the sale and conveyance thereof subject to a mortgage as provided in this Division 74, for such price and at such time as the governing body of the municipality may determine." Ill. Rev. Stat. 1979, ch. 24, par. 11—74—4(6).

The bonds issued under the Bond Act, however, create no liability against the municipality. (Ill. Rev. Stat. 1979, ch. 24, par. 11—74—10.) The bonds do create a lien, however, on the project's rental proceeds. Ill. Rev. Stat. 1979, ch. 24, par. 11—74—9.

The warehouse was completed in November of 1979. During the construction, the plaintiff Zickuhr was authorized to and did hire laborers from the other named plaintiff, Viking Builders, Inc., to work on the project.

In March of 1980, the defendant, the Illinois Department of Labor, pursuant to the prevailing wage act (Ill. Rev. Stat. 1979, ch. 48, par. 39s—1 *et seq.*) issued a subpoena requesting that plaintiffs produce, among other things, the employment records for the construction of the warehouse. Plaintiffs obtained temporary injunctive relief from the subpoena, and filed a suit for declaratory relief. In this suit, plaintiffs sought a declara-

tory judgment to the effect that the project, financed and authorized under the Bond Act, was not subject to the provisions of the prevailing wage act.

The trial court, after considering the stipulated statement of facts and the briefs submitted by the parties, found that the warehouse was not a "public work" as defined in the prevailing wage act; therefore, the act was inapplicable and the subpoena was quashed. The defendant appeals from this determination.

The prevaling wage act, section 39s—1, states:

"It is the policy of the State of Illinois that a wage of no less than the general prevailing hourly rate as paid for work of a similar character in the locality in which the work is performed, shall be paid to all laborers, workers and mechanics employed by or on behalf of any and all public bodies engaged in public works, exclusive of maintenance work." Ill. Rev. Stat. 1979, ch. 48, par. 39s—1.

Section 2 of the prevailing wage act defines "public works" as follows:

" 'Public works' means all fixed works constructed for public use by any public body, * * * whether or not done under public supervision or direction, or paid for wholly or in part out of public funds." (Ill. Rev. Stat. 1979, ch. 48, par. 39s—2.)

Under this statutory language, the prevailing wage act is applicable if the warehouse in question was constructed for a public use by a public body.

The plaintiffs contend that the warehouse was constructed for the use of a private industry, and that a common sense construction of the statutory language indicates that the warehouse is not for "public use" and thus the prevailing wage act is inapplicable.

In support of this position, the plaintiff notes that in *People ex rel. City of Salem v. McMackin* (1972), 53 Ill. 2d 347, 367, the supreme court stated that under the Bond Act the principal function of the municipality is to provide a means to finance industrial projects, and that the municipality does not in any real sense operate the project.

The plaintiffs note that while the city holds legal title to the premises, Central is to be the sole user and sole occupant of the warehouse. Under the agreement between Central and the municipality, Central has the legal responsibility for all expenses and obligations arising from the operation and maintenance of the warehouse. Furthermore, as provided in section 26 of the Revenue Act of 1939, Central must pay real estate taxes on the leased premises. (Ill. Rev. Stat. 1979, ch. 24, par. 11—74—4(7).) Under section 26 of the Revenue Act "the leasehold estate and the appurtenances shall be listed as the property of the lessee thereof, or his assignee, as real estate." Ill. Rev. Stat. 1979, ch 120, par. 507.

The plaintiffs further argue that because the city was not involved in the planning, designing or construction of the warehouse, and did not award or enter into any contracts for the construction, the building was not constructed by a public body. The plaintiff characterizes the city's involvement as a mere conduit for financing.

A 1977 opinion from the Illinois Attorney General's Office, which stated that private homes renovated under the residential rehabilitation program were not for public use, also adopted a plain language interpretation of the meaning of "public works":

> "The term 'public works' or an equivalent phrase has been used in Illinois to describe the building of a jail [citation] and the widening of streams and improvement of harbors. [Citation.]
>
> The kind of work being done in this program simply is not within the plain meaning of the words 'the construction of public works' and the accompanying definition of that phrase as 'all fixed works contracted for public use' by any public body: These words bring to mind the raising of public buildings and the laying of highways and other projects constructed for the benefit and use of the public in general." 1977 Ill. Op. Att'y Gen. 193, 194.

The opinion further stated that a public body was not engaged in the construction of public works, in that the city of DeKalb was only subsidizing the construction; the home owner did the contracting, not the city.

The defendants nonetheless contend that even though the warehouse is for a private use, it is still a "public work" in that there is a sufficient degree of public involvement, purpose and use. The defendant notes that without the municipalities' approval and issuance of the bonds, the warehouse would not have been built. The defendant thus argues that the city is sufficiently involved with the construction to make the prevailing wage act applicable.

The defendant contends that this more expansive definition of "public work" is mandated by the purpose of the Bond Act:

> "* * * the purpose of this Division 74 is to relieve conditions of unemployment, to aid in the rehabilitation of returning veterans, and to encourage the increase of industry within this State, thereby reducing the evils attendant upon unemployment." (Ill. Rev. Stat. 1979, ch. 24, par. 11—74—3.)

The defendant then asserts that because the prevailing wage act shares some of these purposes, in that both laws aim at rectifying adverse employment conditions, it is applicable to projects constructed under the Bond Act.

The Bond Act, however, was also "designed to attract industrial developments to Illinois communities" (*People ex rel. City of Salem v. McMackin* (1972), 53 Ill. 2d 347, 350), and it has the express purpose of encouraging an increase in industry. We note that mandating compliance with the prevailing wage act and all other statutory requirements applicable to "public works" could make the State of Illinois and the provision of its Bond Act less attractive to industry and therein contravene one of the purposes of the Act.

The defendant also cites a recent opinion from the Attorney General's Office which opined that projects constructed under the Bond Act are public works as described in the preference-to-citizens-on-public-works act (Ill. Rev. Stat. 1977, ch. 48, par. 269 *et seq.*) and the prevailing wage act. 1979 Ill. Op. Att'y Gen. 155.

In this opinion, the Attorney General's Office first notes that ownership at the time of construction is a significant factor in determining whether the structure is a public work. (*United States ex rel. Miles Lumber Co. v. Harrison & Grimshaw Construction Co.* (10th Cir. 1962), 305 F.2d 363.) In *Harrison*, however, the court was defining the term "public work" without the aid of a statutory definition. In the instant case, there is a statutory definition, and that definition makes no reference to the ownership of the project. Under the applicable statutory language, the significant factor is whether the project is constructed by a public body for a public use. Furthermore, we note that while the city holds legal title to the Bond Act projects, all other aspects of ownership and control are retained by the private industry. Moreover, under Revenue Rule 68-590, 1968 2 CB 66, the Internal Revenue Department, for the purposes of depreciation, treats the private industry, not the municipality, as the owner of this type of project funded by issuance of municipal bonds.

The Attorney General's opinion also cites *Mayor and City of Baltimore v. State Department of Health* (1978), 38 Md. App. 570, 381 A.2d 1188, when defining "public use." In *Baltimore*, however, the court cited with approval the holding in *Youngstown Cartage Co. v. North Point Peninsula Community Co-Ordinating Council* (1975), 24 Md. App. 624, 630, 332 A.2d 718, 721, which held that State-owned land, leased to a private enterprise for a purely private purpose, is not a "public use."

This opinion from the Attorney General's Office seems to infer that "public use" is synonymous with public purpose and public benefit. The opinion then concludes that because the building of the warehouse will benefit the public (presumably by providing employment opportunities) (*People ex rel. City of Salem v. McMackin* (1972), 53 Ill. 2d 347), it has a public use. (*Chicago Land Clearance Com. v. White* (1952), 411 Ill. 310, 316.) In *McMackin* and *White*, the supreme court was asked to determine the constitutionality of a statute: The Industrial Project Revenue Bond Act

and the Blighted Areas Redevelopment Act of 1947, respectively. In both cases, the statutes were deemed constitutional in that each of the statutes was public in its nature and purpose.

The Office of the Attorney General and the defendant have confused the benefit, use and purpose of the statutes, with the use of the industrial project, in this case, the warehouse. While it seems clear that the city of Polo will publicly benefit from the employment opportunities afforded by the presence of the new warehouse, and while it is also clear that the provisions of the Bond Act are for a public purpose and benefit, it is just as clear that the actual use of the project is private in nature. Under the plain meaning of the statutory language, this warehouse is not for public use and, therefore, the prevailing wage act is inapplicable.

In *Daniels v. City of Fort Smith* (Ark. 1980), 594 S.W.2d 238, 241, the supreme court of Arkansas, when faced with the same issues and basically the same statutory language, came to a similar conclusion:

> "Admittedly, the [project] provides jobs for a substantial number of workers thereby reducing unemployment and indirectly improving the general economic conditions in the area. Any new factory or industrial facility, however, would provide these same incidental benefits to the general public. Although the public will indirectly benefit from the facility, we hold, as did the chancellor, that the project was not constructed for the public use as required by [the prevailing wage act]; therefore, the appellees are not required to comply with [the prevailing wage act.]"

The defendants, nonetheless, urge this court to follow the holding in *Newark Laborers' Pension-Welfare Funds v. Commercial Union Insurance Co.* (1973), 126 N.J. Super. 1, 312 A.2d 649. That case, however, is distinguishable from the case at bar. In that case, the court held that a public housing project was a public work, and the statute authorizing the funding of the housing project specifically required that the housing sponsors pay the prevailing rate. In the case at bar, the industrial project is not a public housing project, nor is there specific statutory language requiring the application of the prevailing wage act.

Furthermore, two other States, Kentucky and Iowa, have also held that projects constructed by private industry and financed under a revenue bond act are not public works for public use and, therefore, are not subject to a prevailing wage act. *Green v. City of Mt. Pleasant* (Iowa 1964), 131 N.W.2d 5; *Gregory v. City of Lewisport* (Ky. 1963), 369 S.W.2d 133.

We affirm the decision of the trial court. The prevailing wage act is applicable only in the construction of "public works." Public works as defined in the statute are projects constructed by a public body for a public use. Although the public may benefit from the construction of the

warehouse, the use of the warehouse is private in nature. Moreover, the actual contracting and construction of the warehouse is done by private industry, not a public body. The public body is no more than a financing conduit.

The matter having thus been resolved, there is no need for the issuance of the subpoena, and the question of the subpoena's validity is thus rendered moot.

The decision of the trial court of the Fifteenth Judicial Circuit is affirmed.

Affirmed.

UNVERZAGT and REINHARD, JJ., concur.