## RHODE ISLAND BUILDING & CONSTRUCTION TRADES COUNCIL

v.

## RHODE ISLAND PORT AUTHORITY AND ECONOMIC DEVELOPMENT CORPORATION; Fidelity Investment Corporation; Lee Arnold, in His Official Capacity as Director of the Rhode Island Department of Labor; Gilbane Building Company; and All Construction Companies That Have Contracted or Will Contract to Perform Work at Island Woods Commerce Park.

No. 97–288–Appeal.

Supreme Court of Rhode Island.

Sept. 23, 1997.

Marc B. Gursky, Renee Bushey, Providence, for Plaintiff.

Joseph S. Larisa, Lisa Dinerman, William P. Robinson, Walter C. Hunter, Robert P. Brooks, Richard E. Stang, Kimberly Ann O'Connell, Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

WEISBERGER, Chief Justice.

This case came before the court on a question certified by the Superior Court in response to a motion filed by the Attorney General in accordance with G.L.1956 § 9–24–27. Said question reads as follows:

> "Do the provisions of either Rhode Island General Laws § 37–13–1, et seq. or § 42–64–30 require the Economic Development Corporation to mandate the payment of prevailing wages for construction of the FMR Rhode Island, Inc. office complex, which is part of an EDC project, as defined in R.I. Gen. Laws §§ 42–64–1, et seq. and being developed in conformity with the Ground Lease attached as Exhibit A?"

This question was certified pursuant to a complaint for declaratory and injunctive relief filed by the plaintiff, Rhode Island Building & Construction Trades Council, which sought to compel the defendants to comply with G.L.1956 §§ 37–13–3 through 37–13–13 and § 37–13–16, prevailing wage statutes relating to the construction of public works in this state.

After receiving initial and responsive briefs from all parties, we assigned the case for oral argument to July 17, 1997. After hearing oral argument and examining the briefs filed by the parties and the ground lease that was attached to the certified question, we entered an order on July 24, 1997, answering the certified question in the negative. This opin-

ion sets forth the reasons underlying our answer to the certified question. The facts of the case which we set forth in our order are as follows.

The project in issue involves the construction in the town of Smithfield, Rhode Island, of one or more office buildings (the office-building complex) by FMR Rhode Island, Inc., a Massachusetts corporation related to defendant Fidelity Investment Corporation (FMR). The ground lease entered into between the Economic Development Corporation (EDC) and FMR provides that EDC will issue $25 million in taxable bonds. The proceeds of these bonds will be used to defray land-acquisition costs and certain infrastructure expenses. These bonds will be repaid by FMR through an annual rental equal to $1 plus the interest and principal payments due on May 1 and November 1 of each year during the term of the lease. In reduction of this obligation, FMR will be entitled to a job-rent credit in the amount of $1,000 for every full-time- equivalent employee (FTE) employed by FMR or its affiliate in the state on or after the date of the lease in excess of 1,000 FTEs.

Moreover, FMR is required to expend a minimum of $30 million in excess of the principal amounts of the bonds in constructing one or more buildings and certain infrastructure improvements. The building(s) and other improvements to be constructed by FMR shall be the sole property of FMR during the term of the lease and are to be used as a regional service center by FMR and its affiliates but may be used for any lawful commercial, office, or industrial purpose. The ground lease to which reference is made was entered into between FMR and EDC as of May 28, 1996.

The sole question that we were called upon to decide was whether the office-building complex (the building or buildings to be constructed by FMR) constitutes a "public work" as that term has been defined by the applicable statutes and case law of this state. The first statute that is of critical importance to our decision is G.L.1956 § 42–64–30 which provides in pertinent part:

"The issuance of all bonds, notes, and other obligations of the [EDC] under the pro-visions of this chapter need not comply with the requirements of any other statute applicable to the issuance of same and contracts for the construction and acquisition of any project undertaken pursuant to this chapter need not comply with any provision of any other state law applicable to contracts for the construction and acquisition of state owned property, *except that the provisions of § 37–13–1 et seq. (prevailing wage); § 37–16–2 et seq. (public works arbitration); and § 37–12–1 et seq. (contractors' bonds) for the construction and acquisition of state or municipally owned property shall be applicable."* (Emphases added.)

The foregoing statute by its clear and plain terms requires that any EDC project which constitutes a public work would be subject to the prevailing wage statute chapter 13 of title 37. Section 37–13–3 sets forth the obligations of contractors who have been awarded contracts for public works:

"All contractors, who have been awarded contracts for public works by an awarding agency or authority of the state or of any city, town, committee, or by any person or persons therein, in which state or municipal funds are used and of which the contract price shall be in excess of one thousand dollars ($1,000) whether payable at the time of the signing of the contract or at a later date, and their subcontractors, on such public works shall pay their employees at weekly intervals and shall comply with the provisions set forth in §§ 37–13–4—37–13–14, inclusive, and § 37–13–16."

In the same title § 37–13–1 defines public works in the following terms:

" 'Public works' as used in this chapter shall mean any public work consisting of grading, clearing, demolition, improvement, completion, repair, alteration, or construction of any public road or any bridge, or portion thereof, or any public building or portion thereof, or any heavy construction, or any public works projects of any nature or kind whatsoever."

As the foregoing statutes make eminently clear, any project undertaken by EDC must comply with the prevailing wage statutes, as

well as certain other provisions relating to arbitration, and contractors' bonds if the project consists of a public work or public works as defined in § 37–13–1. A public work as defined would also include a public building. Thus the question posed concerns whether the office building or buildings to be constructed by FMR would qualify as public building(s) or as a public work.

In resolving this question, we are not dealing with an issue of first impression. This court has earlier evaluated a project aided by the Port Authority (Authority), a predecessor corporation of EDC, in order to determine whether a building constructed by use of proceeds of bonds issued by the Authority but to be utilized by a private corporation constituted a public work. In *James J. O'Rourke, Inc. v. Industrial National Bank,* 478 A.2d 195, 197–98 (R.I.1984), the Authority issued tax-exempt bonds pursuant to § 42–64–30 to finance the building of a meat-processing facility on a parcel of real estate in Burrillville, Rhode Island. The Authority then sold the bonds to the Industrial National Bank of Rhode Island (bank). The private corporation, Daniel Proscuitto, Inc. (DPI), which had previously acquired the real estate, transferred the property to the Authority. The Authority then leased the property back to DPI. Under the terms of the lease the rental was fixed at a sum equal to the debt service on the bonds. The lease further provided that when the bonds were paid, DPI could purchase the property including the meat-processing facility, from the Authority for the sum of $1. The bank acted as trustee. The Authority assigned its interest in the real estate, the meat-processing facility as well as its interest in the DPI lease, to the bank. Thereafter, DPI made all payments directly to the bank as trustee.

A dispute arose when Arctic Insulators and Constructors, Inc. (Arctic), the general contractor hired by DPI, became bankrupt and failed to pay certain subcontractors. The subcontractors sought to recover from the Authority, DPI, and the bank for negligence in failing to require Arctic to furnish a construction bond in accordance with § 37–13–14. In that case this court affirmed a partial summary judgment entered in favor of the defendants in the Superior Court.

The bases for the affirmance were two. First, this court held that the building of a meat-processing plant to be utilized by a private corporation for its own business purposes did not constitute a public work as defined in § 37–13–1. The court commented on this issue as follows:

"It is also obvious that DPI's processing plant cannot be classified as a public work. By no stretch of the imagination can the plant be considered a public building; it is not open to the general public and no governmental functions are conducted on its premises. The project was not constructed with public funds, and the necessary private capital was supplied by the bank. Whatever profits result from the sale of DPI's dried, cured, and spiced hams will be earmarked for DPI's shareholders rather than the State of Rhode Island." *O'Rourke,* 478 A.2d at 198.

As a second issue this court determined that § 42–64–30 exempted the Authority from "any provision of any other state law applicable to contracts for the construction and acquisition of state owned property." Since the 1994 amendment this basis for the court's decision in *O'Rourke* has been removed. Now without equivocation an EDC project constituting a public work would be subject to the prevailing wage statutes, the public-works arbitration statutes, and the contractors' bond statutes. However, the first basis for the court's decision in *O'Rourke* remains sound and undisturbed by the 1994 amendment (P.L.1994, ch. 25, § 1) to § 42–64–30. The first basis for the decision was the determination that a meat-processing plant constructed for use by a private corporation did not constitute a public work.

This court is not the only court which has determined that a project constructed for private use even with the assistance of funds provided by a state or a municipal agency does not constitute a public work and is not subject to prevailing wage statutes and other statutes relating to public works. *See, e.g., Daniels v. City of Fort Smith,* 268 Ark. 157, 594 S.W.2d 238 (1980); *Zickuhr v. Bowling,* 97 Ill.App.3d 534, 53 Ill.Dec. 65, 423 N.E.2d

257 (1981); *State ex rel. Ashcroft v. City of Sedalia,* 629 S.W.2d 578 (Mo.Ct.App.1981); *Vulcan Affordable Housing Corp. v. Hartnett,* 151 A.D.2d 84, 545 N.Y.S.2d 952 (N.Y.App.Div.1989); *Erie County Industrial Development Agency v. Roberts,* 94 A.D.2d 532, 465 N.Y.S.2d 301 (N.Y.App.Div.1983); annot., 5 A.L.R. 5th 470, 494–99 (1992).

We recognize that there is a division of authority on this issue, depending upon the nature and the quality of the project to be built. However, the better reasoned cases, including our own, are guided by the nature of the use to which the ultimate project is to be put rather than the source of the funding.

In the case at bar we conclude that the principles enunciated in *O'Rourke* are controlling. In this case the actual construction costs of the building(s) will not be met by bonds issued by EDC but will be covered by the $30 million (minimum) in funds to be provided by FMR. The ground lease provides that FMR will own the building(s) to be constructed during the term of the lease. It further provides that the building(s) will be used as a regional service center by FMR and its affiliates or for any lawful commercial, office, or industrial purpose. As in *O'Rourke* there is no indication that the office-building complex will be utilized for any public purpose.

For the foregoing reasons we conclude that the office building complex will not constitute a public work as defined in § 37–13–1 and as further elaborated in *O'Rourke.* Consequently, the prevailing wage statutes are not applicable to the building(s) which constitute the office complex. Our opinion makes no reference to any infrastructure expenditures such as roads, or an access highway or the like, which are not the subject of the certified question.

For the reasons stated, we answered the certified question in the negative. The papers in the case may be remanded to the Superior Court.