NO. 4-09-0121     Filed 11/20/09

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| TOWN OF NORMAL, | ) | Appeal from |
|      Plaintiff and | ) | Circuit Court of |
|      Counterdefendant-Appellee, | ) | McLean County |
|      v. | ) | No. 07MR98 |
| F.J. HAFNER and FRED HAFNER, | ) | |
|      Defendants and | ) | Honorable |
|      Counterplaintiffs- | ) | G. Michael Prall |
|      Appellants. | ) | Judge Presiding. |

_____

JUSTICE POPE delivered the opinion of the court:

In September 2008, defendants and counterplaintiffs, F.J. and Fred Hafner (Hafners), filed a motion for summary judgment seeking an order that they complied with the terms and provisions of a real estate redevelopment agreement they entered with plaintiff and counterdefendant, Town of Normal (Normal). That same month, Normal moved for summary judgment on the ground the Hafners breached the agreement by failing to pay the prevailing wage to laborers working on the project. In December 2008, the court granted Normal's motion for summary judgment and denied the Hafners' motion for summary judgment. The Hafners appeal, arguing the court erred in granting Normal's motion for summary judgment because (1) the agreement failed to include a prevailing-wage provision; (2) the Prevailing Wage Act (Act) (820 ILCS 130/1 through 130/12 (West 2004)) is not applicable to the agreement; and (3) if the agreement is interpreted to include a prevailing-wage provision, Normal was not entitled to terminate

the agreement for breach of the prevailing-wage provision.  We reverse.

## I. BACKGROUND

### A. Factual History

On September 7, 2004, the parties entered into an agreement for the Hafners to redevelop three properties on Broadway Street in Normal in exchange for a portion of the increased tax revenues generated by the redevelopment.  On September 20, 2004, the president of the board of trustees of Normal approved the agreement in resolution No. 3584.  The resolution states Normal has adopted a Downtown Renewal Tax Increment Redevelopment Plan for the area in which the three Broadway properties are located. The resolution also notes one of the purposes of the agreement is "to attract other private development [to Normal]."

The first page of the agreement states the agreement is intended to "alleviate certain private costs of the Redeveloper." Under a section entitled "Representation of the Redeveloper" on page 15, the Hafners are described as "sole proprietors."  Page six describes the specific terms of the interest subsidy as follows:

"(a) The annual payment by the Town shall not exceed fifty (50%) percent of the Tax Increment generated by the project;

(b) To the extent that fifty (50%)

- 2 -

percent of the Tax Increment is not sufficient to make the full annual payment, then any shortfall shall carryover to the following year and become part of the annual payment for that year;

(c) To the extent that fifty (50%) percent of the Tax Increment exceeds the annual payment in [a] year, the excess shall be used to pay any previous year['']s shortfall or shall be applied to [any] future year['']s annual payment;

(d) The obligation of the Town to make these annual payments, including any obligations to pay for any shortfalls from prior years, shall cease upon the termination of the Redevelopment Project Area pursuant to the Act."

Section 2.9 of the agreement states "all work with respect to the [p]roject, the [p]roject [s]ite[,] and any other structures or buildings on the [p]roject [s]ite shall conform to [a]pplicable [l]aw."

Town of Normal ordinance No. 4947 was enacted to establish wages for workers employed in public works. Section 2 of the ordinance states "[n]othing herein contained shall be construed to apply said general prevailing rate of wages as

herein ascertained to any work or employment except public works construction of the Town of Normal to the extent required by the aforesaid Act."  Town of Normal Ordinance No. 4947, §2 (eff. June 8, 2004).

### B. Procedural Background

In April 2007, Normal filed a complaint for declaratory judgment, seeking a finding (1) the Hafners were required to pay prevailing wages under the terms of the agreement; (2) the Hafners were obligated to pay prevailing wages under the terms of the Act; and (3) the Hafners materially breached the agreement, rendering Normal exempt from performing its obligations under the agreement.

In April 2008, the parties agreed to a stipulation of facts, stating, in pertinent part: (1) on September 7, 2004, the parties entered a redevelopment agreement providing for the Hafners' redevelopment of three residential properties on Broadway Street in Normal; (2) the Hafners developed 602, 604, and 607 Broadway Street in compliance with the agreed-upon plans; (3) the Hafners incurred costs of approximately $1,425,040; (4) to finance the project, the Hafners took out two mortgage loans with Soy Capital Bank & Trust in the following amounts: (a) $825,000 for 607 Broadway Street and (b) $1 million for 602 and 604 Broadway Street; (5) as an incentive to redevelop the property, Normal agreed to pay the Hafners 30% of the annual interest costs incurred on the project after its completion,

provided each annual payment did not exceed 50% of the tax increment generated by the project that year; (6) in the event 50% of the tax increment would not cover the payment, any shortfall would carry over to the following year and would be paid by any subsequent excess of tax increment; (7) Normal's obligation to make the payment would cease upon termination of the agreement; (8) pursuant to section 2.9 of the agreement, the parties agreed construction on the project site would conform to applicable law; (9) the Hafners did not pay prevailing wages to the laborers employed on the project; (10) the term "prevailing wage" is not used in the agreement; (11) Normal did not advance any public funds to the Hafners to redevelop the property; (12) Normal has not made any payments to the Hafners; (13) during the tax years 2004-06, Normal received $42,455.75 in tax increments from the three properties; (14) if the Act is not applicable, the Hafners are entitled to the incentive payments from Normal; and (15) if the Act is applicable, the Hafners are not entitled to incentive payments from Normal.

Normal moved for summary judgment in April 2008, seeking an order declaring (1) the Hafners were obligated to pay prevailing wages under the terms of the agreement and (2) failure to pay prevailing wages constituted a breach of the contract, releasing Normal from its obligation to pay the Hafners a portion of the tax increment.

- 5 -

In May 2008, the Hafners filed a countermotion for summary judgment, arguing (1) the term "prevailing wage" does not appear in the agreement, which counsel for Normal prepared; (2) the Hafners' redevelopment project was not a public work under Illinois law; (3) the Hafners were not a public body under Illinois law; (4) no public funds were used in the construction of the Hafners' redevelopment project; (5) the Hafners have complied with the terms and provisions of the agreement and are entitled to the incentive payments on the interest pursuant to the agreement; and (6) Normal breached the agreement by failing to timely pay the Hafners the interest incentives.

In June 2008, the trial court denied both parties' motions for summary judgment, finding declaratory judgment was not the proper remedy and the case posed too many issues for a summary-judgment order.

In September 2008, the Hafners filed a counterclaim against Normal for payment of (1) the interest incentive set forth in the agreement and (2) reasonable attorney fees and costs incurred as a result of Normal's breach of the agreement. Later that month, both parties filed motions for summary judgment on the Hafners' counterclaim.

In December 2008, the trial court granted Normal's motion for summary judgment, denied the Hafners' motion for summary judgment, and dismissed with prejudice the Hafners'

counterclaim.  The Hafners filed a motion to reconsider, which the court denied in January 2009.

This appeal followed.

## II. ANALYSIS

We initially note this case presents an issue of first impression in Illinois.  Previous cases have addressed the applicability of the Act, but none have posed the specific issue presented by the agreement between Normal and the Hafners: does the Act apply to private developers constructing private family residences in a tax increment financing district where the developers receive a public incentive in the form of a portion of the tax increment generated from the project?

We review de novo a trial court's grant of summary judgment.  Murray v. Chicago Youth Center, 224 Ill. 2d 213, 228, 864 N.E.2d 176, 185 (2007).  "Summary judgment is appropriate whenever the pleadings, depositions, admissions, and affidavits on file, viewed in the light most favorable to the nonmoving party, show there is no genuine issue of material fact between the parties and that the moving party is entitled to judgment as a matter of law."  Murray, 224 Ill. 2d at 228, 864 N.E.2d at 185.

Section 1 of the Act states its purpose as follows:

"It is the policy of the State of Illinois that a wage of no less than the general prevailing hourly rate as paid for

- 7 -

work of a similar character in the locality in which the work is performed, shall be paid to all laborers, workers[,] and mechanics employed by or on behalf of any and all public bodies engaged in public works." 820 ILCS 130/1 (West 2004).

Section 2 of the Act defines "public works" as follows:

"'Public works' means all fixed works constructed by any public body, other than work done directly by any public utility company, whether or not done under public supervision or direction, or paid for wholly or in part out of public funds. 'Public works' as defined herein includes all projects financed in whole or in part with bonds issued under the Industrial Project Revenue Bond Act[,] *** the Industrial Building Revenue Bond Act, the Illinois Finance Authority Act, the Illinois Sports Facilities Authority Act, or the Build Illinois Bond Act, and all projects financed in whole or in part with loans or other funds made available pursuant to the Build Illinois Act." 820 ILCS 130/2 (West 2004).

Section 2 of the Act defines "public body" as follows:

"'Public body' means the State or any officer, board or commission of the State[,] or any political subdivision or department thereof, or any _institution_ supported in whole or in part by public funds***." (Emphasis added.) 820 ILCS 130/2 (West 2004).

Black's Law Dictionary defines "institution" as "[a]n established organization, esp. one of a public character, such as a facility for the treatment of mentally disabled persons." Black's Law Dictionary 813 (8th ed. 2004). Webster's Dictionary similarly defines "institution" as "an established organization or corporation (as a college or university) esp. of a public character." Merriam-Webster's Collegiate Dictionary 605 (10th ed. 2000).

The Tax Increment Allocation Redevelopment Act (TIF Act) states the following:

"[I]n order to promote and protect the health, safety, morals, and welfare of the public, that blighted conditions need to be eradicated and conservation measures instituted, and that redevelopment of such areas be undertaken[,] *** it is necessary to

- 9 -

encourage private investment and restore and
enhance the tax base of the taxing districts
in such areas by the development or
redevelopment of project areas."  65 ILCS
5/11-74.4-2(b) (West 2004).

On appeal, the Hafners argue the trial court erred in
granting summary judgment in favor of Normal because (1) the
agreement failed to include a prevailing-wage provision; (2) the
Act is not applicable to the agreement; and (3) if the agreement
is interpreted to include a prevailing-wage provision, Normal was
not entitled to terminate the agreement for breach of the
prevailing-wage provision.  Normal contends the Hafners were
obligated to pay prevailing wages under the Act because (1) the
Hafners became a public body for purposes of the Act by agreeing
to accept public funds and (2) the redevelopment project is a
public work.  Normal further argues that despite failing to
include the term "prevailing wage" in the agreement, the
agreement binds the Hafners under the Act because it is an
"applicable law."  For the reasons stated below, we conclude the
court erred in granting summary judgment in favor of Normal
because the Act is inapplicable to the parties' agreement and
inapplicable to the Hafners, who are private developers.

In arguing the Hafners are a public body, Normal relies
on the same two cases the trial court cited in its order:  People

ex rel. Bernardi v. Illini Community Hospital, 163 Ill. App. 3d 987, 516 N.E.2d 1320 (1987), and Opportunity Center of Southeastern Illinois, Inc. v. Bernardi, 204 Ill. App. 3d 945, 947, 562 N.E.2d 1053, 1054 (1990).

In Illini Community Hospital, a not-for-profit nonsectarian hospital received tax money from its county between 1982 and 1985. Illini Community Hospital, 163 Ill. App. 3d at 988, 516 N.E.2d at 1320. The money was collected pursuant to a statute authorizing taxation "'for the purpose of maintaining public non-sectarian hospitals,' [citation]," and under the definition of the statute, "'public nonsectarian hospital' includes nonprofit community hospitals. [Citation]." Illini Community Hospital, 163 Ill. App. 3d at 988, 516 N.E.2d at 1320. In 1985, the hospital entered into a contract for the construction of a canopy over the emergency-room entrance. Illini Community Hospital, 163 Ill. App. 3d at 988-89, 516 N.E.2d at 1320. The contract did not specify that workers would be paid the prevailing wage. Illini Community Hospital, 163 Ill. App. 3d at 989, 516 N.E.2d at 1320-21. After the Department of Labor sued to enforce the Act against the hospital, the trial court dismissed the complaint on the grounds the hospital was not subject to the Act because it was not a public body. Illini Community Hospital, 163 Ill. App. 3d at 989, 516 N.E.2d at 1321. On appeal, this court reversed, finding an institution that is

- 11 -

supported in whole or part by public funds is a public body. Illini Community Hospital, 163 Ill. App. 3d at 990, 516 N.E.2d at 1321. Because the hospital received tax money pursuant to statute, it was a public body under the Act. Illini Community Hospital, 163 Ill. App. 3d at 990, 516 N.E.2d at 1322.

In Opportunity Center of Southeastern Illinois, a private, not-for-profit corporation providing social, educational, and rehabilitation programs for developmentally disabled adults contracted for the remodeling of its building. Opportunity Center of Southeastern Illinois, 204 Ill. App. 3d at 947, 562 N.E.2d at 1054. The parties' stipulation of facts provided the Opportunity Center received over 50% of its annual receipts between 1973 and 1987 from the Department of Mental Health. Opportunity Center of Southeastern Illinois, 204 Ill. App. 3d at 949-50, 562 N.E.2d at 1056. The trial court found the Opportunity Center was not a "public body" under the Act. Opportunity Center of Southeastern Illinois, 204 Ill. App. 3d at 947, 562 N.E.2d at 1054. The appellate court reversed on the grounds the Act applies when "public money is spent on a 'fixed work' that is being constructed by a public body." Opportunity Center of Southeastern Illinois, 204 Ill. App. 3d at 951, 562 N.E.2d at 1056. The center was supported by public money in that it contracted with the Department of Mental Health to provide services to disabled adults, and it was a public body because it

received half of its budget from public funds.  Opportunity Center of Southeastern Illinois, 204 Ill. App. 3d at 949-50, 562 N.E.2d at 1057.  Thus, the remodeling project fell under the purview of the Act.  Opportunity Center of Southeastern Illinois, 204 Ill. App. 3d at 951, 562 N.E.2d at 1057.

Both Illini Community Hospital and Opportunity Center of Southeastern Illinois are distinguishable from the present case.  In those cases, the institutions at issue consistently received public funds over a span of years.  Unlike Illini Community Hospital and the Opportunity Center, the Hafners did not receive public funds from Normal or other government entities.  Merely as an incentive to redevelop the Broadway properties, Normal agreed to reimburse part of the interest the Hafners were obligated to pay Soy Capital Bank for financing the project out of the increased tax revenue generated as a result of the redevelopment of the properties.

Instructive in this case is Zickuhr v. Bowling, 97 Ill. App. 3d 534, 423 N.E.2d 257 (1981), in which the reviewing court held a warehouse construction project financed by municipal bonds was not subject to the Act.  The court stated:

> "The [Act] is applicable only in the
> construction of 'public works.'  Public works
> as defined in the statute are projects
> constructed by a public body for a public

use.  Although the public may benefit from the construction of the warehouse, the use of the warehouse is private in nature. Moreover, the actual contracting and construction of the warehouse is done by private industry, not a public body.  The public body is no more than a financing conduit."  Zickuhr, 97 Ill. App. 3d at 539-40, 423 N.E.2d at 262.

In the present case, the trial court opined that failure to apply the Act to the Hafners would allow future parties to contract around the Act by choosing a business structure that is outside the reach of the Act while engaging in activity the Act covers.  Herein lies the error in the court's analysis.  Similar to the plaintiff's warehouse construction in Zickuhr, the Hafners were building private residences, not public fixtures.  The project did not include construction of a public works facility, and it was not a public service provider, such as a hospital or community center for disabled adults.  The public funds the Hafners are entitled to under the agreement are generated by the increased property-tax dollars assessed to their private property, which is attributable to the improvements the Hafners made using a private mortgage loan.  Further, the type of economic incentive Normal provided to the Hafners is commonly

offered to private companies and developers by cities wishing to bolster economic activity.  Finding the Hafners are a public body would mean all private entities receiving a tax benefit in future development projects would be required to pay the prevailing wage to laborers.  As the above-referenced cases have demonstrated, the purpose of the Act is to ensure laborers on public projects are paid the prevailing wage, not to interfere with economic development by private companies.

Additionally, the legislative history of the Act supports our conclusion that the legislature did not intend private individuals' receipt of money under the TIF Act to qualify their redevelopment project as a public work.  In construing the meaning of a statute, a court's primary purpose is to determine and give effect to the legislature's intent.  Ready v. United/Goedecke Services, Inc., 232 Ill. 2d 369, 375, 905 N.E.2d 725, 729 (2008).  To ascertain the meaning of an ambiguous statute, courts may use accepted principles of statutory construction.  Ready, 232 Ill. 2d at 375, 905 N.E.2d at 729. "When construing a statute, the expression of one thing in a provision generally excludes all others, even where there are no negative words of prohibition."  People v. Hunter, 298 Ill. App. 3d 126, 131, 698 N.E.2d 230, 232 (1998).

In 2003, with Public Act 93-16, the legislature amended the definition of "public works."  Pub. Act 93-16, §5, eff.

January 1, 2004 (2003 Ill. Legis. Serv. 158 (West)), amending 820 ILCS 130/2 (West 2002). The words "for public use" were deleted after the word "constructed," changing the definition to "all fixed works constructed by any public body, other than work done directly by any public utility company, whether or not done under public supervision or direction, or paid for wholly or in part out of public funds." Pub. Act 93-16, §5, eff. January 1, 2004 (2003 Ill. Legis. Serv. 158 (West)), amending 820 ILCS 130/2 (West 2002). In addition to the financing acts already identified in the "public works" definition, the legislature included additional financing acts as follows:

> "'Public works' also includes all projects financed in whole or in part with funds from the Fund for Illinois' Future under [s]ection 6z-47 of the State Finance Act, funds for school construction under [s]ection 5 of the General Obligation Bond Act, funds authorized under [s]ection 3 of the School Construction Bond Act, funds for school infrastructure under [s]ection 6z-45 of the State Finance Act, and funds for transportation purposes under [s]ection 4 of the General Obligation Bond Act." Pub. Act 93-16, §5, eff. January 1, 2004 (2003 Ill. Legis. Serv. 158 (West)),

amending 820 ILCS 130/2 (West 2002).

Before approving the above amendment, the legislature considered House Bill 3399 (93d Ill. Gen. Assem., House Bill 3399, 2003 Sess.), which proposed changing the definition of "public works" to also include the TIF Act.  House Bill 3399 was rejected, and the TIF Act was not included in the definition of "public works."

Pursuant to the rules of statutory construction, where the legislature amended the definition of "public works" to include projects financed by even more financing acts than already appeared, yet continued to exclude the TIF Act, particularly after considering its inclusion, we interpret the exclusion of the TIF Act to mean projects do not become public works by accepting the benefits of the TIF Act.

Because the Hafners, who are individual sole proprietors, were constructing private residences on privately owned land with financing from a private bank with a mortgage for which the Hafners are personally liable, they were not obligated to pay the prevailing wage.  The Act, the language of the agreement, Normal's resolution No. 3584, and ordinance 4947 all support this finding.  The Hafners are not a public body under the Act because they are not the State nor an office, board, or commission of the State, nor any political subdivision thereof, nor are they an "institution" supported in whole or in part by public funds.  In addition, when a private individual uses only

- 17 -

private funds to redevelop an area under the TIF Act, the project is not a public work. Consequently, the Act did not apply to the parties' agreement.

Further, the agreement, drafted by Normal, identifies the Hafners as "sole proprietors" and states the agreement is intended to alleviate "private costs" of the redeveloper. Resolution No. 3584 specifically states the purpose of the agreement was "to attract other private development." (Emphasis added.) Finally, ordinance 4947 provides the prevailing wage shall not be construed to apply to anything besides public-works construction by Normal. See Town of Normal Ordinance No. 4947, §2 (eff. June 8, 2004). As private multifamily residences are not public works, the Hafners are not obligated under ordinance No. 4947 to pay the prevailing wage. Thus, the court erred in (1) granting Normal's motion for summary judgment and (2) denying the Hafners' motion for summary judgment.

III. CONCLUSION

For the reasons stated, we reverse and remand for the trial court to vacate its order granting summary judgment to Normal and to enter an order granting summary judgment for the Hafners.

Reversed and remanded.

TURNER and APPLETON, JJ., concur.