(No. 103474.—

TERRY E. READY, Special Adm'r of the Estate of Michael P. Ready, Deceased, Appellant, v. UNITED/GOEDECKE SERVICES, INC., *et al.* (United/Goedecke Services, Inc., Appellee).

*Opinion filed November 25, 2008.—Modified on denial of rehearing March 23, 2009.*

Joseph A. Power, Jr., and Devon C. Bruce, of Power Rogers & Smith, P.C., of Chicago, for appellant.

John W. Patton, Jr., of Patton & Ryan, and Edward M. Kay, Barbara I. Michaelides, Paul V. Esposito and Tor-

rence E. Lewis, of Clausen Miller P.C., all of Chicago, for appellee.

Bruce R. Pfaff, of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

David H. Levitt, of Hinshaw & Culbertson LLP, of Chicago, for *amicus curiae* Illinois Association of Defense Trial Counsel.

Glen E. Amundsen and Michael Resis, of SmithAmundsen LLC, of Chicago, for *amici curiae* Illinois Chambers of Commerce *et al.*

JUSTICE FREEMAN delivered the judgment of the court, with opinion.
Chief Justice Fitzgerald and Justice Burke concurred in the judgment and opinion.
Justice Kilbride specially concurred, with opinion.
Justice Garman dissented, with opinion, joined by Justice Karmeier.
Justice Thomas took no part in the decision.

## OPINION

In 2003, following a jury trial, the circuit court of Cook County entered judgment in favor of plaintiff Terry Ready in a wrongful-death action stemming from the death of her husband, Michael, in a workplace accident. The appellate court affirmed in part and reversed in part and remanded for a new trial, directing that fault for the accident be reapportioned. 367 Ill. App. 3d 272. We allowed plaintiff's petition for leave to appeal. 210 Ill. 2d R. 315. For the reasons set forth below, we affirm in part and reverse in part the judgment of the appellate court.

## BACKGROUND

In December 1999, a pipe-refitting project was under

way at the Midwest Generation, L.L.C., power plant in Joliet, Illinois, where Michael Ready was employed as a maintenance mechanic. As part of this project, scaffolding material had to be raised from the ground to the level of the eighth floor. The general contractor of the project, BMW Constructors, Inc. (BMW), had subcontracted with United/Goedecke Services, Inc. (United[1]), to perform the scaffolding work, including the lifting of scaffolding materials.

On December 23, 1999, a United employee was supervising the lifting of wooden trusses. Another United employee was rigging the trusses for lifting, using a single sling. Ready was standing beneath the rigging so that he could give hand signals to the operator of the tugger that was being used to lift the trusses. The tugger was owned by Midwest and was being operated by a Midwest employee. Eight trusses were lifted without incident. As the ninth truss was being lifted, it slipped out of the sling, falling eight floors to the ground level where it struck and killed Ready.

Ready was survived by his wife, Terry, and two children. The wrongful-death suit brought by Terry, as administrator of Ready's estate, named two defendants: United and BMW. Both defendants filed third-party complaints against Midwest pursuant to the Joint Tortfeasor Contribution Act (Contribution Act) (740 ILCS 100/0.01 *et seq.* (West 1998)). Plaintiff thereafter amended her complaint, adding Midwest as a defendant. She reached settlement agreements totaling $1.113 million with BMW and Midwest. United did not object to the settlements and the trial court found that they were reached in good faith.

---

[1]We note that defendant United/Goedecke Services, Inc., refers to itself as "Goedecke." We acknowledge that, in general, a party should be addressed in the manner the party prefers. However, because the appellate court opinion below refers to this entity as "United," we elect to do the same for the sake of consistency.

Prior to trial, the parties filed numerous motions *in limine,* some of which the trial court granted. As a result of these rulings, United was not allowed to present any evidence at trial regarding the conduct of the settling defendants. In addition, the trial court denied United's motion to list BMW and Midwest on the verdict form so that if the jury found United at fault, it could consider whether to allocate some portion of the fault not only to Ready, but also to his employer and the general contractor.

The case proceeded to trial with United as the sole defendant. The jury found United liable for negligence and awarded damages of $14.23 million. Based on section 2—1117 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1987, ch. 110, par. 2—1117), the trial court found United jointly and severally liable for the amount of the verdict remaining after offsets for Ready's comparative negligence (35%) and the settlement amounts paid by BMW and Midwest. United was held liable in the amount of $8.137 million.

On appeal, United argued that the trial court erred by failing to include the settling defendants on the verdict form so that the jury could determine their share of fault, if any, for the fatal accident. If the jury had been asked to consider their relative fault, United argued, its share of fault might have been set at less than 25% and, under section 2—1117, United would have been only severally liable.

The appellate court affirmed in part and reversed in part and remanded the cause for a new trial as to liability only. 367 Ill. App. 3d 272. The appellate court concluded that, under section 2—1117, a nonsettling defendant's fault should be assessed relative to the fault of all defendants, including settling defendants. The court thus held that, in the case at bar, BMW and Midwest should have been included on the verdict form

for purposes of fault apportionment. The court also concluded, contrary to the circuit court, that evidence relating to the culpability of these settled defendants was relevant and admissible. The appellate court affirmed the amount of the damages award, concluding that United had forfeited the right to challenge this amount.

We permitted the Illinois Trial Lawyers Association, the Illinois Association of Defense Trial Counsel, and the Illinois Chamber of Commerce to file *amicus curiae* briefs. 210 Ill. 2d R. 345.

## ANALYSIS

The central issue in this appeal is whether settled tortfeasors are "defendants sued by the plaintiff" within the meaning of section 2—1117 of the Code. Plaintiff argues that the statute unambiguously excludes settling defendants from the apportionment of fault. United takes the opposite view, contending that the statute unambiguously requires a jury to allocate fault to settling and dismissed defendants.

United argues, in addition, that the appellate court erred in affirming the amount of the damages award.

Section 2—1117 was amended in 2003.[2] Before the appellate court below, the parties disagreed as to which version of section 2—1117 applied in the case at bar. The appellate court concluded that the preamendment version of the statute was applicable. The parties are no longer in dispute on this point. Our analysis, therefore, is limited to the version of section 2—1117 in effect at the time of plaintiff's accident, *i.e.*, the 1986 version.

Section 2—1117 provides:

"Joint Liability. Except as provided in Section 2—1118,

---

[2]This amendment excluded the plaintiff's employer from the third-party defendants subject to a finding of fault. 735 ILCS 5/2—1117 (West 2004) (limiting the allocation of fault to "the plaintiff, the defendants sued by the plaintiff, and any third party defendant[ ] *except the plaintiff's employer*" (emphasis added)).

in actions on account of bodily injury or death or physical damage to property, based on negligence, or product liability based on strict tort liability, all defendants found liable are jointly and severally liable for plaintiff's past and future medical and medically related expenses. Any defendant whose fault, as determined by the trier of fact, is less than 25% of the total fault attributable to the plaintiff, the defendants sued by the plaintiff, and any third party defendant who could have been sued by the plaintiff, shall be severally liable for all other damages. Any defendant whose fault, as determined by the trier of fact, is 25% or greater of the total fault attributable to the plaintiff, the defendants sued by the plaintiff, and any third party defendants who could have been sued by the plaintiff, shall be jointly and severally liable for all other damages." Ill. Rev. Stat. 1987, ch. 110, par. 2—1117.

In construing the meaning of a statute, our primary objective is to ascertain and give effect to the intent of the legislature. *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006). The best evidence of the legislature's intent is the language of the statute, which must be given its plain and ordinary meaning. *Hadley v. Illinois Department of Corrections*, 224 Ill. 2d 365, 371 (2007); *Paris v. Feder*, 179 Ill. 2d 173, 177 (1997). However, if the language of a statute is ambiguous, courts may look to tools of interpretation to ascertain the meaning of a provision. *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 511 (2007); *DeLuna*, 223 Ill. 2d at 59. The construction of a statute is a question of law, which we review *de novo*. *Wade*, 226 Ill. 2d at 510-11; *DeLuna*, 223 Ill. 2d at 59.

The first sentence of section 2—1117 deals with liability for a plaintiff's medical expenses. The sentence states, in pertinent part: "[A]ll defendants found liable are jointly and severally liable for plaintiff's past and future medical and medically related expenses." Ill. Rev. Stat. 1987, ch. 110, par. 2—1117. Liability for medical expenses is not at issue in the case at bar.

The second and third sentences of section 2—1117 deal with liability for all other damages. According to this portion of the statute, a defendant whose fault is 25% or greater is jointly and severally liable for these damages, while a defendant whose fault is less than 25% is only severally liable. In making this determination, the fault to be considered is that of "the plaintiff, the defendants sued by the plaintiff, and any third party defendants who could have been sued by the plaintiff." Ill. Rev. Stat. 1987, ch. 110, par. 2—1117.

The relevant phrase, for purposes of our analysis, is "defendants sued by the plaintiff." The question is whether settling defendants such as BMW and Midwest are "defendants sued by the plaintiff" within the meaning of section 2—1117. United answers this question in the affirmative, arguing that the statutory language plainly includes settling defendants within its scope. Noting that "sued" is in the past tense, United asserts: "Defendants dismissed from an action prior to verdict based on settlement were 'sued by the plaintiff.'" United thus contends, citing *Lannom v. Kosco*, 158 Ill. 2d 535 (1994), that all defendants, including settling defendants, must be included in the apportionment of fault.

Plaintiff takes the opposite view, arguing that the plain meaning of section 2—1117 "does not permit the apportionment of fault to dismissed defendants." According to plaintiff, the phrase "defendants sued by the plaintiff" includes only those defendants who remain in the case when it is submitted to the fact finder. Necessarily excluded from this group are settling defendants such as BMW and Midwest who were dismissed from the action. Plaintiff states: "Dismissed or former defendants are not defendants." Plaintiff cites *Lannom* in support of her view of section 2—1117.

Initially, we reject the parties' simultaneous claims that *Lannom* supports their opposite viewpoints. Even

disregarding the contradictory nature of these claims, we note that the relevant issue in *Lannom*, unlike the case at bar, was whether section 2—1117 prohibited the dismissal of a defendant or third party from an action where such dismissal was otherwise warranted. The instant appeal presents a different issue: whether section 2—1117 requires the inclusion of settled and otherwise dismissed defendants in the allocation of fault. *Lannom* did not interpret the statutory language to determine this question.

More important, we disagree with both plaintiff and United that section 2—1117 is unambiguous with regard to whether settled tortfeasors are to be included in the apportionment of fault. A statute is ambiguous when it is capable of being understood by reasonably well-informed persons in two or more different senses. *Wade*, 226 Ill. 2d at 511.

The phrase "defendants sued by the plaintiff" is not defined in the statute. The standard dictionary definition of "sue" includes "to seek justice or right from (a person) by legal process : bring an action against : prosecute judicially," as well as "to proceed with (a legal action) and follow up to proper termination : gain by legal process." Webster's Third New International Dictionary 2284 (2002). The first of these definitions appears to correspond with United's view that any defendant who was sued by the plaintiff is included within the scope of section 2—1117, regardless of whether that defendant may have settled with the plaintiff. The second definition, on the other hand, appears to comport with plaintiff's view that section 2—1117 applies only to those defendants who remain in the case when it is submitted to the fact finder. These definitions thus provide no help in determining which of these contradictory views might have been intended by the legislature.

Nor is this matter clarified by an examination of the

statute as a whole. We find no clear indication of a legislative preference for either of the parties' asserted meanings over the other. Accordingly, based on a careful examination of the language of section 2—1117, we conclude that the statute is ambiguous with regard to whether it includes within its scope settling tortfeasors such as BMW and Midwest.

We disagree with the dissent that the phrase "defendants sued by the plaintiff" unambiguously includes settling defendants such as BMW and Midwest. We note that, in establishing this alleged "plain meaning," the dissent, in addition to citing multiple dictionary definitions, engages in a rather complex discussion of grammatical principles, particularly those relating to participial verb forms. The need for such an extended discussion strongly belies the notion that the statute unambiguously speaks in terms that the ordinary person, exercising ordinary common sense, can understand.

Our determination that section 2—1117 is ambiguous finds support in the conflicting interpretations of the statute by our appellate court. In *Blake v. Hy Ho Restaurant, Inc.*, 273 Ill. App. 3d 372 (1995), for example, the court held that defendants who had settled were no longer defendants in the suit and were not to be included in the apportionment of fault under section 2—1117. *Blake*'s holding was noted in *Lombardo v. Reliance Elevator Co.*, 315 Ill. App. 3d 111, 125 (2000), which concluded that *Blake* "establish[ed] guidelines for using the attributions of fault for purposes of determining whether the defendants meet the 25% threshold of responsibility requisite for joint liability." In remanding for a new trial, *Lombardo* instructed the circuit court to "consider the fault of only those parties specified in section 2—1117 for purposes of determining joint liability. *Following Blake*, the court should not subject the settling defendants to the expense of discovery ***." (Emphasis added.)

*Lombardo*, 315 Ill. App. 3d at 125. Accord *Yoder v. Ferguson*, 381 Ill. App. 3d 353, 374 (2008) ("In *Lombardo*, the First District of this court adopted the holding of the Fifth District in *Blake*"). In *Skaggs v. Senior Services of Central Illinois, Inc.*, 355 Ill. App. 3d 1120 (2005), on the other hand, the court held that a settling defendant does not lose its status as a defendant sued by the plaintiff, and settling defendants therefore are to be included in the apportionment of fault. See also *Yoder*, 381 Ill. App. 3d at 378-79 (following *Blake* in limiting fault allocation to "remaining defendants"); *Heupel v. Jenkins*, 379 Ill. App. 3d 893, 903 (2008) (concluding that section 2—1117 applies to all tortfeasors, including those who settled with the plaintiff). Indeed, individual members of this court disagree on this same point. Compare 232 Ill. 2d at 386 (Kilbride, J., specially concurring) (concluding that the language of section 2—1117, viewed in its entirety, clearly excludes settling tortfeasors from the allocation of fault) with 232 Ill. 2d at 390 (Garman, J., dissenting, joined by Karmeier, J.) (concluding that the plain language of the statute clearly *includes* settling tortfeasors in the allocation of fault).

Though the difference in appellate court interpretations of section 2—1117 is not dispositive as to whether the statute is ambiguous, it strongly suggests that it is. Once a court has concluded, through an examination of statutory language, that a statute is ambiguous, the existence of differing interpretations in the lower courts may be considered in support of the finding of ambiguity. See *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 184 (2005) (holding that "the wealth of competing interpretations of section 1(f) [of the Consumer Fraud Act] is a compelling indication of the statute's ambiguity").

Where a statute is ambiguous, "courts may look to tools of interpretation to ascertain the meaning of a

provision." *DeLuna*, 223 Ill. 2d at 59; *Wade*, 226 Ill. 2d at 511. One such aid to construction is the principle that, where the legislature chooses not to amend a statute after a judicial construction, it is presumed that the legislature has acquiesced in the court's statement of the legislative intent. *Wakulich v. Mraz*, 203 Ill. 2d 223, 233 (2003); see also *Bruso v. Alexian Brothers Hospital*, 178 Ill. 2d 445, 457-59 (1997) (applying this principle to prior judicial construction by appellate court). As previously noted, in 1995 our appellate court held that, under section 2—1117, settling defendants were not to be included in the apportionment of fault. *Blake*, 273 Ill. App. 3d at 376. The 2003 amendment to section 2—1117 did not deal with this prior holding in *Blake*. The legislature's failure to address *Blake*'s holding at that time is an indication of the legislature's acceptance, as of 2003, of this judicial interpretation of section 2—1117. *Yoder v. Ferguson*, 381 Ill. App. 3d 353, 377-78 (2008) (accepting argument, based on *Bruso*, that legislature's failure to alter relevant language of section 2—1117 in 2003 created presumption that legislature agreed with 1995 interpretation of statute in *Blake*).

Also applicable in this case is the rule that an amendment to a statute creates a presumption that the amendment was intended to change the law. *People v. Hicks*, 119 Ill. 2d 29, 34 (1987). Plaintiff cites this principle in arguing that the amendments included in Public Act 89—7, entitled "Tort Reform Act of 1995," indicate that settled tortfeasors were not to be included in the apportionment of fault under the original, 1986 statute. Plaintiff points, in particular, to the Public Act 89—7 amendments to section 2—1116 of the Code, which was titled, as amended: "Limitation on recovery in tort actions; fault." The amended section 2—1116(b) defined "Tortfeasor" as "any person, excluding the injured person, whose fault is a proximate cause of the [injury]

for which recovery is sought, regardless of whether that person is the plaintiff's employer, regardless of whether that person is joined as a party to the action, and *regardless of whether that person may have settled with the plaintiff.*" (Emphasis added.) 735 ILCS 5/2—1116(b) (West 1996). Plaintiff asserts that, under this amendment, settling tortfeasors were to be *included* on the verdict form. According to plaintiff, this amendment constituted a recognition by the legislature that settling tortfeasors were *not* originally included in the apportionment of fault. Plaintiff cites *Hicks*, which stated:

"It is an elementary rule of statutory construction that '[t]he addition of a new provision in a statute by amendment is an indication of the absence of its implied or prior existence.' [Citation.] Absent substantial considerations to the contrary, 'an amendatory change in the language of a statute creates a presumption that it was intended to change the law as it theretofore existed.' " *Hicks*, 119 Ill. 2d at 34.

In *Best v. Taylor Machine Works*, 179 Ill. 2d 367 (1997), this court held Public Act 89—7 unconstitutional in its entirety. As a result, section 2—1116, as well as section 2—1117, which also was amended by Public Act 89—7, reverted to the original language of the 1986 version, *i.e.*, the language in effect prior to the adoption of Public Act 89—7. "The effect of enacting an unconstitutional amendment to a statute is to leave the law in force as it was before the adoption of the amendment." *People v. Gersch*, 135 Ill. 2d 384, 390 (1990). According to plaintiff, the 1995 amendment to include settling defendants in the apportionment of fault is a strong indication that the 1986 version—the statute at issue in the case at bar—was not intended to include such defendants.

United responds that the 1995 amendments are irrelevant to the interpretation of section 2—1117. United notes that the amendments were declared void *ab initio*

and without legal effect. According to United, these amendments therefore have no bearing on the analysis of section 2—1117. This argument misses the mark.

In contending that the 1995 amendments *are* relevant to the analysis, plaintiff does not argue that they are legally effective. Instead, plaintiff simply cites the amendments as record evidence that is indicative of the original intent of the 1986 statute. We agree with plaintiff that the 1995 amendments are a compelling indication that settling defendants were not meant to be included in the apportionment of fault under the 1986 statute.

Based on the well-established principles set forth above regarding (1) the legislature's failure to amend a statute following a judicial construction and (2) the amendment of a statute to add a new provision, we conclude that section 2—1117, as enacted in 1986, was never intended to include settling tortfeasors in the apportionment of fault.

Although not necessary, additional support for this conclusion is found in statements made by Illinois Senator John Cullerton during floor debate on Senate Bill 1296, which is aimed at amending section 2—1117. Senate Bill 1296 was passed by the Senate on March 20, 2007, but remains pending in the House. While the statements of Senator Cullerton, a cosponsor of the bill, are nonbinding, they are nevertheless informative and serve to confirm our conclusion, reached above, regarding the meaning of section 2—1117.

On March 20, 2007, during the discussion of Senate Bill 1296, Senator Cullerton provided some historical background regarding section 2—1117. Senator Cullerton stated that, since the enactment of section 2—1117 in 1986, the law has been that if a defendant is less than 25% negligent, "that defendant only has to pay the percentage that the jury found [the defendant liable]." 95th Ill. Gen. Assem., Senate Proceedings, March 20,

2007, at 76 (statements of Senator Cullerton). Senator Cullerton indicated that in a situation where the plaintiff settles with defendants, "the plaintiff then continues the lawsuit against the remaining defendant, and after the verdict, there's a subtraction from the verdict of the amount of money that the defendants who *** settled the case had to pay. And the remaining defendant—pays the remainder." 95th Ill. Gen. Assem., Senate Proceedings, March 20, 2007, at 76 (statements of Senator Cullerton). Senator Cullerton emphasized that Senate Bill 1296 was intended to clarify "what the intent of the 1986 law was. *** It just makes it clear, if you settle with somebody, their names don't go on the verdict form." 95th Ill. Gen. Assem., Senate Proceedings, March 20, 2007, at 77 (statements of Senator Cullerton).

Notwithstanding the foregoing, United argues various policy reasons in support of its interpretation of section 2—1117. United argues, for example, that the exclusion of settling defendants from the apportionment of fault results in unfairness. Plaintiff, for her part, argues policy reasons as well. She contends, for example, that the inclusion of settling tortfeasors in the allocation of fault would discourage future settlements. Deciding between such competing policy positions is, in our view, a task better left to the legislature. See *Heckendorn v. First National Bank of Ottawa*, 19 Ill. 2d 190, 194-95 (1960); *Board of Education of Dolton School District 149 v. Miller*, 349 Ill. App. 3d 806, 811 (2004).

In sum, we disagree with the appellate court's holding that, under section 2—1117, a remaining defendant's culpability must be assessed relative to the culpability of all defendants, including settling defendants. We reverse that portion of the appellate court's judgment reversing the circuit court as to liability.

We next consider United's claim that the appellate court erred in affirming the amount of the damages

award. United argues that because the appellate court reversed the circuit court as to liability, it should also have reversed as to damages. Starting from the premise that damages flow from liability, United contends that, once the appellate court reversed as to liability, "there were no damages for the appellate court to affirm." We need not resolve this question. Our decision today reverses the appellate court's judgment as to liability, effectively eliminating the basis for United's claim that the damages award should have been reversed.

The remaining issue before us is whether the appellate court erred in concluding that United forfeited the right to challenge the damages amount. The appellate court held that United forfeited this issue by mentioning the damage award only in the "Concluding Remarks" section of its brief, without presenting it as a separate issue for review. Specifically, the appellate court noted, United failed to set forth in its brief "specific reasons or argument as to why the damage award was excessive or unreasonable" and failed to "specifically argue that the damage award was improper." 367 Ill. App. 3d at 280. The appellate court pointed to Supreme Court Rule 341(h)(7), which requires that arguments "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." 210 Ill. 2d R. 341(h)(7).

Before this court, United argues that the appellate court erred by applying the doctrine of procedural default. A review of the appellate court's application of the doctrine would necessarily require that we examine the briefs filed in the appellate court. However, United has failed to utilize Supreme Court Rule 318(c), which provides: "If it is important for the Supreme Court to know the contentions of any party in the Appellate Court, copies of the pertinent Appellate Court briefs certified by the clerk of that court may be filed in the Supreme

Court." 155 Ill. 2d R. 318(c). Because the briefs filed by the parties in the appellate court are not a part of the record provided to this court, we are unable to review whether the appellate court erred in applying procedural default.

We affirm the judgment of the appellate court upholding the amount of the damages award.

In its petition for rehearing, United argues that this court, in light of its resolution of the section 2—1117 question, should address United's concern that it was deprived of a sole proximate cause defense when the trial court refused its request for an instruction on sole proximate cause. We note that the issue was raised in the appellate court, but that court concluded that, because it was remanding for a new trial, it "need not now address United's contention." 367 Ill. App. 3d at 279. Because our opinion today reverses the appellate court's judgment ordering a new trial, we remand the cause to the appellate court for a decision on United's claim that the jury should have been instructed on sole proximate cause.

## CONCLUSION

We affirm the appellate court's upholding of the damages award, but reverse the remainder of the judgment of the appellate court. We hold that section 2—1117 does not apply to good-faith settling tortfeasors who have been dismissed from the lawsuit. We remand the cause to the appellate court for a decision on United's claim that the jury should have been instructed on sole proximate cause.

*Appellate court judgment affirmed in part*
*and reversed in part;*
*cause remanded with directions.*

JUSTICE THOMAS took no part in the consideration or decision of this case.

JUSTICE KILBRIDE, specially concurring:

While I agree with the plurality's determination that the meaning of the phrase "defendants sued by the plaintiff" is unclear, I disagree with its conclusion that an examination of the statute as a whole fails to clarify that meaning. Therefore, I respectfully concur in the plurality opinion.

As this court recently noted in *People v. Perry*, 224 Ill. 2d 312, 323 (2007):

"The principles guiding our analysis are well established. Our primary objective is to ascertain and give effect to legislative intent, the surest and most reliable indicator of which is the statutory language itself, given its plain and ordinary meaning."

See also *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 479 (1994). Nonetheless, " '[w]e do not view words and phrases in isolation but consider them in light of other relevant provisions of the statute.' " *People v. Beachem*, 229 Ill. 2d 237, 243 (2008), quoting *People v. Campa*, 217 Ill. 2d 243, 252-53 (2005). See also *Town & Country Utilities, Inc. v. Illinois Pollution Control Board*, 225 Ill. 2d 103, 117 (2007). Here, an examination of the statute as a whole aids in the construction of the critical statutory phrase.

The first sentence of section 2—1117 provides:

"Except as provided in Section 2—1118, *in actions on account of bodily injury or death or physical damage to property, based on negligence, or product liability based on strict tort liability, all defendants found liable* are jointly and severally liable for plaintiff's past and future medical and medically related expenses." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 110, par. 2—1117.

In this sentence, the legislature limits the statute's scope to specific categories of tort actions. Only those "defendants found liable" "*in*" the specified actions are implicated. (Emphasis added.) Ill. Rev. Stat. 1987, ch. 110, par. 2—1117. The legislature's decision to limit section 2—1117's application only to defendants *in* the

specified categories of actions strongly suggests that the statute was intended to include only those *defendants* who *remained "in" the action* when liability was determined. Under the express language of the first sentence of section 2—1117, former defendants who are not parties in the specified tort action when liability is determined are not subject to joint and several liability for a plaintiff's medical expenses.

The reach of the second and third sentences of section 2—1117 is similarly limited to the types of actions noted in the first sentence. Therefore, the same limitation on the procedural status of the defendants subject to liability also applies to the final two sentences in the statute. In other words, those two sentences apply only in the same type of actions listed in the first sentence. They do not apply to other categories of legal actions.

A comparison of words used in all three sentences in section 2—1117 is instructive. The second and third sentences state:

"Any defendant whose fault, as determined by the trier of fact, is less than 25% of the total fault attributable to the plaintiff, the defendants sued by the plaintiff, and any third party defendant who could have been sued by the plaintiff, shall be severally liable for all other damages. Any defendant whose fault, as determined by the trier of fact, is 25% or greater of the total fault attributable to the plaintiff, the defendants sued by the plaintiff, and any third party defendants who could have been sued by the plaintiff, shall be jointly and severally liable for all other damages." Ill. Rev. Stat. 1987, ch. 110, par. 2—1117.

A comparison with the first sentence reveals that the legislature repeats the word "defendants" throughout the provision. Nothing in the statute indicates that the legislature intended the word "defendants" to have a different meaning in the second and third sentences than it has in the first sentence. Accordingly, the language chosen by the legislature in all three sentences appears to include in the allocation of fault for liability purposes

only those "defendants" who remain "in" the tort action until verdict.

This interpretation also comports with the ordinary meaning of the word "defendant." In Webster's Third New International Dictionary, a "defendant" is defined as "a person required to make answer *in an action or suit in law or equity* or in a criminal action." (Emphasis added.) Webster's Third New International Dictionary 591 (1981).[3] Under this definition, a "defendant" must answer and defend against claims made *in a legal action* and must, therefore, be a party in the lawsuit. Thus, under this definition, the need for opposition *"in an action* or suit in law or equity" establishes the adversarial nature of the relationship required between the plaintiff and any defendant in the action who is included in the apportionment of fault. This same adversarial relationship is expressly required by the first sentence of section 2—1117, where all defendants found liable "in" the specified tort actions are jointly and severally liable for the plaintiff's medical expenses.

Additionally, construction of section 2—1117 comports with the use of the word "defendant" as a legal term of art. In Black's Law Dictionary, a "defendant" is defined as "[t]he person *defending or denying*; the party against whom relief or recovery *is sought in an action or suit* or the accused in a criminal case." (Emphases added.) Black's Law Dictionary 377 (5th ed. 1979). Applying this definition, a settled tortfeasor who has been dismissed from the lawsuit is no longer "defending or denying" and is no longer a "party against whom relief or recovery is sought *in an action or suit*." (Emphasis added.)

Notably, the legislature chose to limit the allocation

---

[3]When citing dictionary definitions, I use the edition in effect at the time the statute was enacted to reflect most accurately the intent of the legislature.

of fault to only three types of parties: "the plaintiff, the defendants sued by the plaintiff, and any third party defendants who could have been sued by the plaintiff." Ill. Rev. Stat. 1987, ch. 110, par. 2—1117. By expressly creating three categories for the allocation of fault within the specified tort actions, the legislature signaled that fault should be apportioned only among those parties. The legislature did not choose to create a fourth category for "former defendants" or "settled defendants." Under the plain meaning of the relevant words, the absence of that express category signals the legislature's intent to exclude persons or entities no longer engaged in an active plaintiff-defendant relationship at the time of fault allocation. See *Bridgestone/Firestone, Inc. v. Aldridge*, 179 Ill. 2d 141, 151-52 (1997) ("Where a statute lists the things to which it refers, there is an inference that all omissions should be understood as exclusions"). Therefore, I wholeheartedly agree with the plurality's conclusion that section 2—1117 does not permit the allocation of fault to settling defendants that have been dismissed from the lawsuit.

This conclusion is consistent with our statements in *Unzicker v. Kraft Food Ingredients Corp.*, 203 Ill. 2d 64 (2002), even though that case is not directly on point. In *Unzicker*, this court determined that the language of section 2—1117 demonstrated the legislature's intent to determine tort liability by dividing responsibility among "those people *in the suit* *** who might have been responsible for the plaintiff's injuries." (Emphasis added.) *Unzicker*, 203 Ill. 2d at 78-79, 80.

Although *Unzicker* was superceded by statute, the 2003 amendments did not affect the statutory language at issue in this case, and *Unzicker* is still applicable to the 1986 version of section 2—1117. The statutory analysis in *Unzicker* is instructive here. In *Unzicker*, we noted that in enacting the 1986 version of section

2—1117, "the legislature referred to a division of fault among the plaintiff, the defendants sued by the plaintiff, and any third-party defendants who could have been sued by the plaintiff." *Unzicker*, 203 Ill. 2d at 77.

As this court recognized in *Unzicker*, in apportioning responsibility under section 2—1117, "the legislature looked to those people *in the suit*." (Emphasis added.) *Unzicker*, 203 Ill. 2d at 78. *Unzicker* explained that "the party must already have been brought into the case by a defendant for that party to be included in the division of fault." *Unzicker*, 203 Ill. 2d at 78. Our decision in *Unzicker*, therefore, is consistent with the plurality's current, *de novo*, interpretation of section 2—1117, holding that the legislature intended to divide responsibility only among those parties in the suit, not among those that have been dismissed. For the reasons stated, I specially concur in the plurality's decision.

JUSTICE GARMAN, dissenting:

The plurality concludes that the phrase "defendants sued by the plaintiff" in section 2—1117 of the Code of Civil Procedure (735 ILCS 5/2—1117 (West 1998)) is ambiguous. It then construes the phrase as referring to only those defendants who were sued by the plaintiff but did not enter into a good-faith settlement agreement prior to the entry of judgment. 232 Ill. 2d at 382. I believe that the phrase "defendants sued by the plaintiff" unambiguously refers to those individuals or entities against whom the plaintiff filed suit. I, therefore, dissent.

PLAIN MEANING

The plurality begins its analysis by noting that the phrase "is not defined in the statute." 232 Ill. 2d at 377. The lack of a statutory definition could be seen as an indication of the legislature's belief that the words it chose were so clear that they did not require further definition or that a standard legal dictionary would reveal

that words are unambiguous. Black's Law Dictionary defines the word "sue" as "[t]o institute a lawsuit against (another party)." Black's Law Dictionary 1473 (8th ed. 2004). Given this meaning, all three of the defendants in the present case were "sued by the plaintiff."

As the plurality notes, a statutory term is ambiguous if it is capable of being understood by reasonably well-informed persons in two or more different senses. 232 Ill. 2d at 377, citing *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 511 (2007). Although there is no reason to suppose that the legislature intended the word "sued" to carry any meaning other than the plain and simple definition found in the standard legal dictionary, the plurality finds ambiguity in two alternate usages given in a general usage dictionary. 232 Ill. 2d at 377.

While it is not inappropriate to utilize a general usage dictionary to determine the meaning of a statutory term, even if that term may also be found in a legal dictionary (see, *e.g.*, *People v. Beachem*, 229 Ill. 2d 237, 245-46 (2008) (finding use of the undefined statutory term "custody" to be ambiguous because the broad definition found in the legal dictionary was not clarified by the equally broad definition found in a general usage dictionary)), the plurality overlooks the requirement that a term will be found to be ambiguous only if the two asserted meanings are themselves reasonable. *In re J.W.*, 204 Ill. 2d 50, 85 (2003).

As United points out, the legislature's choice of the word "sued," as opposed to some other form of the verb, renders only one of the two usages reasonable. The plurality dismisses the verb's tense without discussion (232 Ill. 2d at 377).

It is well established that the tense of a verb used in a statute is an element of plain meaning. *In re Gwynne*

*P.*, 215 Ill. 2d 340, 357-58 (2005) (concluding that the verb phrase in the statute is in the present perfect tense). See also *Ingalls Shipbuilding, Inc. v. Director, Office of Workers' Compensation Programs, Department of Labor*, 519 U.S. 248, 255, 136 L. Ed. 2d 736, 746, 117 S. Ct. 796, 801 (1997) ("the use of the present tense" of the verb "enter" in the statutory phrase " 'If the person entitled to compensation ... enters into a settlement' " agreement in 33 U.S.C. §933(g)(1) indicates that the person "must be so entitled at the time of settlement" (emphasis omitted)); *Dole Food Co. v. Patrickson*, 538 U.S. 468, 478, 155 L. Ed. 2d 643, 654, 123 S. Ct. 1655, 1662 (2003) ("plain text" of statute, "because it is expressed in the present tense," reveals its meaning).

The dictionary entry for the word "sue" is immediately followed by the words "sued; sued; suing; sues." Webster's Third New International Dictionary 2284 (2002). According to the dictionary's explanatory notes, the principal parts of each verb are listed in the following order: "the past, the past participle, the present participle, and the present 3d singular." The example is given of the entry for the verb "tie," which contains the principal parts "tied ... tied ... tying ... ties." Webster's Third New International Dictionary 15a (2002). Thus, in *Ingalls Shipbuilding*, the Supreme Court found plain meaning based on the drafters' use of the word "enters," the present third person singular form of the verb "enter." *Ingalls Shipbuilding*, 519 U.S. at 255, 136 L. Ed. 2d at 746, 117 S. Ct. at 801.

"Sue," like "tie," is a regular verb, that is, one whose past tense and past participle forms are created by the addition of "d" or "ed." Webster's Third New International Dictionary 15a (2002). "Sued" is both the past tense and the past participle of the verb "sue," just as "tied" is both the past tense and the past participle of "tie."

A participle is a "nominal verb form used with an auxiliary verb to indicate certain tenses and also functioning independently as an adjective." Webster's II New College Dictionary 801 (1999). In the phrase "defendants sued by the plaintiff," the word "sued" is used as a past participle. Because no auxiliary verb is used, the word "sued" describes the defendants and, therefore, functions as an adjective.

Participles, like the verbs from which they are derived, have not only tense, but voice. "The voice of a verb shows whether the subject of the verb has performed the action (active voice), or has received the action (passive voice)." M. Shertzer, The Elements of Grammar 26 (1986). The active voice participles of the verb "sue" are "suing" in the present tense and "having sued" in the past tense. Thus in the active voice, present tense: "The plaintiffs suing the corporation are former employees." And in the active voice, past tense: "The plaintiffs, having sued their employer, abandoned their workers' compensation claims."

The passive voice participles are "being sued" in the present tense, "sued" in the past tense, and "having been sued" in the present perfect tense. In the passive voice, present tense: "The defendants being sued are the hospital, the physician, and the nurse." In the passive voice, present perfect tense: "The defendants, having been sued, tendered the matter to their insurance carrier."

The phrase used in section 2—1117—"defendants sued by the plaintiff"—is in the passive voice, past tense. Because it is in the past tense, it clearly refers to all defendants against whom the plaintiff filed suit. If the legislature had intended this provision to apply to only those defendants remaining in the lawsuit at the time of trial, it would have used the present tense of the participle.

Reliance on the rules of grammar to determine whether statutory language is ambiguous is no more unusual than reliance on the dictionary definition of a statutory term. See, *e.g.*, *Bowman v. American River Transportation Co.*, 217 Ill. 2d 75, 83 (2005) (stating that "anyone well versed in statutory construction, or even English grammar" would understand the plain meaning of the statutory provision at issue); *In re Marriage of Kates*, 198 Ill. 2d 156, 164 (2001) (distinguishing between an independent and a subordinate clause). This court should not utilize the generally accepted rules of grammar as a means of finding plain meaning in some cases, but ignore these rules in others.

Indeed, the phrase "defendants sued by the plaintiff" employs a common and popularly understood construction consisting of a plural noun, a past participle, the preposition "by," and a singular noun, as in "films directed by George Lucas," a phrase that clearly includes not only the film he is currently working on, but all of his previous movies. The phrase "players coached by Lovie Smith" includes not only the current roster of Chicago Bears players, but those he coached before coming to Chicago. Yet, the plurality willfully ignores the basic rules of grammar and popularly understood meaning to conclude that "defendants sued by the plaintiff" means only those defendants who remain in the case at the time the verdict is rendered. However, even if all three defendants in the present case had settled and it had never gone to trial, all three would still be "defendants sued by the plaintiff."

In sum, the plain meaning of the statutory language, which is—after all—the best indicator of legislative intent (*Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 504 (2000)), is consistent with the simple definition found in Black's Law Dictionary and the first of the two usages described in Webster's. United,

Midwest, and BMW are all "defendants sued by the plaintiff" because the plaintiff instituted a lawsuit against each of them (Black's Law Dictionary 1473 (8th ed. 2004)), "seek[ing] justice *** by legal process," by "bring[ing] an action against" them (Webster's Third New International Dictionary 2284 (2002)).

The second usage found in Webster's, "to proceed with (a legal action) and follow up to proper termination" (Webster's Third New International Dictionary 2284 (2002)), is not a reasonable reading of the phrase in the context of section 2—1117. In this sense, not even United was a "defendant sued by the plaintiff" until after the trial court entered judgment on the jury's verdict. It would be absurd to read the term "sued" to refer only to those defendants against whom judgment has been entered when the statute as a whole is designed to operate during trial. See *Michigan Avenue National Bank*, 191 Ill. 2d at 503-04 (all provisions of a statute are to be viewed as a whole; words and phrases are not to be viewed in isolation, but must be interpreted in light of other relevant provisions of the statute).

Because the phrase "defendants sued by the plaintiff" in the context of section 2—1117 is reasonably capable of only one meaning, it is unambiguous and our responsibility is to give effect to the intent of the legislature.

CONSTRUCTION OF THE STATUTE

Having found section 2—1117 ambiguous, the plurality employs two canons of statutory construction to determine its meaning. First, the plurality applies the canon that where the legislature amends the statute after it has been judicially construed, it may be presumed that the legislature acquiesces in the court's construction. 232 Ill. 2d at 380. Second, the plurality applies the canon that an amendment to a statute may be presumed to be intended to change the law. 232 Ill. 2d at 380.

Although I believe that no construction is necessary

because the meaning of the statute is plain, I must comment on the manner in which the plurality employs these tools of statutory construction because I believe that this decision may cause this court and our circuit and appellate courts to improperly apply these tools in future cases.

The plurality applies these two canons in reverse chronological order. I believe that it is simpler to apply them in historical sequence. Thus, I begin at the beginning.

The operative language "defendants sued by the plaintiff" was enacted in 1986. Pub. Act 84—1431, art. 5, §1, eff. November 26, 1986. In 1994, this court discussed section 2—1117 of the Code in its decision in *Lannom v. Kosco*, 158 Ill. 2d 535 (1994). I agree with the plurality that *Lannon* did not interpret the statutory language at issue (232 Ill. 2d at 377) and, therefore, does not provide any guidance in this case. In 1995, the appellate court decided *Blake v. Hy Ho Restaurant, Inc.*, 273 Ill. App. 3d 372 (1995) (settling defendants are not to be included in the apportionment of fault under section 2—1117).

The next significant event in the history of section 2—1117 was its amendment as part of Public Act 89—7, commonly referred to as the Tort Reform Act of 1995. Under this amendment, fault was to be apportioned among the defendant being held liable at trial and "all other tortfeasors, as defined in Section 2—1116, whose fault was a proximate cause" of the injury or death. Section 2—1116 defined "tortfeasor" as "any person, excluding the injured person, whose fault is a proximate cause of the death, bodily injury to person, or physical damage to property for which recovery is sought, regardless of whether that person is the plaintiff's employer, regardless of whether that person is joined as party to the action, and regardless of whether that person may have settled with the plaintiff." Pub. Act 89—7, eff. March 9, 1995 (subsequently held unconstitutional in its entirety in *Best v. Taylor Machine Works*, 179 Ill. 2d 367 (1997)).

In discussing this failed amendment to section 2—1117, the plurality employs the canon of construction that an amendment to a statute is evidence of a legislative intent to change the law. 232 Ill. 2d at 380, citing *People v. Hicks*, 119 Ill. 2d 29, 34 (1987). Thus, the plurality concludes, the 89th General Assembly's clear and unequivocal intent to include settling defendants in the apportionment of fault signals that, prior to this amendment, settling defendants were not included in the apportionment of fault.

The plurality, however, relies on an incomplete statement of the canon of construction dealing with subsequent amendments. As recently as 2004, this court has stated that an " 'amendment of an unambiguous statute indicates a purpose to change the law, while no such purpose is indicated by the mere fact of an amendment of an ambiguous provision.' " *Williams v. Staples*, 208 Ill. 2d 480, 496 (2004), quoting *O'Connor v. A&P Enterprises*, 81 Ill. 2d 260, 271 (1980). This canon reflects the commonsense notion that if a statute is ambiguous, a subsequent amendment will clarify the statute rather than change the law by replacing the intent of the enacting legislature with the intent of the amending legislature.

This places the plurality in a "Catch-22." If, as the plurality asserts, the phrase "defendants sued by the plaintiff" is ambiguous, the 1995 amendment cannot be used to reveal a presumed intent to change the law. Their reliance on this canon is, therefore, entirely misplaced. In my opinion, the phrase is unambiguous and, therefore, it is inappropriate to utilize this or any other canon of construction.

This court again considered the meaning and application of section 2—1117 in *Unzicker v. Kraft Food Ingredients Corp.*, 203 Ill. 2d 64 (2002), a case not mentioned in the plurality opinion. The plaintiff worked

for a contractor, installing pipes at a plant owned by Kraft. After he was seriously injured while on the job, he applied for and was awarded workers' compensation benefits. He sued Kraft, which filed a third-party complaint against the employer. *Unzicker*, 203 Ill. 2d at 69-70.

At the time the injury occurred, section 2—1117 provided that for purposes of determining whether defendant would be held jointly and severally liable, his fault was to be compared to the fault of "the plaintiff, the defendants sued by the plaintiff, and any third party defendants who could have been sued by the plaintiff." 735 ILCS 5/2—1117 (West 1994). The question for this court was whether the employer, who was immune from liability under the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 2000)), was nevertheless a third-party defendant who "could have been sued by the plaintiff." See *Unzicker*, 203 Ill. 2d at 72.

This court did not specifically state in *Unzicker* whether it found the phrase to be ambiguous. It did, however, agree with the appellate court's interpretation, including the conclusion that the "clear legislative intent in section 2—1117 was that minimally responsible defendants should not be responsible for entire judgments." *Unzicker*, 203 Ill. 2d at 77, citing *Unzicker v. Kraft Food Ingredients Corp.*, 325 Ill. App. 3d 587, 593 (2001). In addition, this court noted that reading the phrase "third party defendants who could have been sued by the plaintiff" to include employers who were immune from further liability under the Workers' Compensation Act was consistent with the existing body of law holding that immunity under the Workers' Compensation Act is "in the nature of an affirmative defense that must be raised in the trial court if the plaintiff brings a suit." *Unzicker*, 203 Ill. 2d at 77. This court further noted that if "the legislature intended to use language that would

exclude employers, we believe that it would have simply put in language specifically excluding employers." *Unzicker*, 203 Ill. 2d at 78.

The plurality does not mention *Unzicker*, yet it is relevant to the 2003 amendment to section 2—1117 that added the phrase "except the plaintiff's employer." See Pub. Act 93—12, §5, eff. June 4, 2003. In assessing the significance of this amendment, the plurality ignores the legislature's clear intent to supersede this court's decision in *Unzicker* in favor of employing the canon of construction that when the legislature chooses not to amend a statute after a judicial construction, it is presumed to acquiesce in the court's statement of the legislative intent. 232 Ill. 2d at 380 (citing *Wakulich v. Mraz*, 203 Ill. 2d 223, 233 (2003), and *Bruso v. Alexian Brothers Hospital*, 178 Ill. 2d 445, 457-59 (1997)).

The plurality overstates the power of the canon. Because the canon is a tool of construction and not a rule of law, the court *may* rely upon the canon to presume legislative intent to acquiesce if circumstances warrant, but it goes too far to say that such intent "is presumed" (see *Perry*, 224 Ill. 2d at 331). The basis for applying the presumption is very weak where, as here, the legislature was clearly acting for a specific purpose, that is, to supersede this court's holding in *Unzicker*, which involved a different portion of the statute than is at issue in the present case.

The plurality nevertheless finds that the legislature implicitly acquiesced in the appellate court's holding in *Blake* because it failed to address *Blake*'s holding at that time. 232 Ill. 2d at 380. I have several concerns about the manner in which the plurality applies this canon of construction.

First, while it is true that we have utilized this canon in the past, we have done so in the context of deeming the legislature to be aware of and, thus, acquiescing in

previous constructions of this court. In *Wakulich*, for example, we noted that we had considered and rejected the plaintiff's suggested reading of the Dramshop Act eight years previously in *Charles v. Seigfried*, 165 Ill. 2d 482 (1995). We observed that prior to our decision in *Charles*, "the General Assembly had considered imposing some form of social host liability upon adults who furnish alcohol to underage persons at least six times, but that such attempts were rejected." *Wakulich*, 203 Ill. 2d at 233. We then noted that since our decision in *Charles*, the General Assembly had considered, but not adopted, several bills that would have superseded our holding in that case. Applying the acquiescence canon, we concluded that although the legislature had continued to amend the statute "in other respects," it had made no change that would have superseded this court's previous and long-standing interpretation that the Dramshop Act was "intended to preempt the entire field of alcohol-related liability." *Wakulich*, 203 Ill. 2d at 233.

In the present case, however, the plurality is applying the canon to presume that when the legislature acted for the specific purpose of rejecting this court's holding in *Unzicker*, it is to be presumed that it was aware of and acquiesced in the appellate court's holding eight years previously in *Blake*, a case that was not even cited in our *Unzicker* decision because it construed an entirely different phrase in the same statute. The plurality provides no legislative history of the enactment of the 2003 amendment to support the suggestion that the legislature was actually aware of *Blake*. It is certain, however, that it was actually aware of *Unzicker*. The canon, which is not a rule of law, but merely a tool that may be employed when it is likely to reveal legislative intent, is less than helpful in this situation.

In my opinion, the canon is much stronger when applied to previous decisions of this court than when ap-

plied to an appellate court decision. The plurality cites *Bruso* as authority for applying this canon to prior judicial construction by the appellate court. 232 Ill. 2d at 380. However, in *Bruso*, we did not apply the acquiescence canon. Instead, we resolved the question of interpretation of section 13—212(b) of the Code of Civil Procedure on the basis of plain meaning. *Bruso*, 178 Ill. 2d at 453 (finding the section at issue "unambiguous" and stating that its "plain language" demonstrates the intent of the legislature).

We then went on to address the defendant's various arguments, including the argument that the 1987 amendment to the provision evinced legislative acquiescence to the appellate court's decision in *Passmore v. Walther Memorial Hospital*, 152 Ill. App. 3d 554 (1987). Before doing so, however, we noted that "where the language of a statute plainly reveals its intent, there is no need for this court to look further" and that in applying the plain language of a statute, it is not this court's function to search for any subtle or not readily apparent intention of the legislature. *Bruso*, 178 Ill. 2d at 455. In the end, we rejected the defendant's argument that the canon of construction favored its position, stating that when it enacted the 1987 amendment, the "legislature chose *not* to alter" the provision at issue and that there was "simply no indication that the 1987 amendment was intended to have any effect" on the meaning of the provision at issue. (Emphasis in original.) *Bruso*, 178 Ill. 2d at 458.

Thus, our discussion of the canon in *Bruso* was *dictum*, because it was not necessary to the resolution of the case once we determined that the meaning of the provision was plain. We did not "apply[ ] this principle to prior judicial construction by [the] appellate court." 232 Ill. 2d at 380, citing *Bruso*, 178 Ill. App. 3d at 457-59. *Bruso*, therefore, provides no authority for employing the

canon in the present circumstances, where the legislature in 2003 was acting in response to a decision of this court and cannot reasonably be presumed to have considered an eight-year-old appellate court decision dealing with a different statutory term.

Second, the plurality overlooks the importance of the decision of the appellate court in *Lombardo v. Reliance Elevator Co.*, 315 Ill. App. 3d 111 (2000), which was decided five years after *Blake* and three years prior to the 2003 amendment. The plaintiff maintenance worker at a bank was injured when the lift he was riding from the basement level to the sidewalk level of the building suddenly fell. He sued the beneficiary of the trust that held title to the building (WS Partners), the company hired by the Village of Oak Park to conduct regular inspections of lifts in the village (EIS), the individual inspector (Jacobitz), and the company hired by the building owner to maintain the lift (Reliance). Reliance filed a third-party claim for contribution against the plaintiff's employer, who was the tenant of the building at the time of the accident. Jacobitz, EIS, and the employer reached settlements with the plaintiff. *Lombardo*, 315 Ill. App. 3d at 114. The case proceeded to trial against the two non-settling plaintiffs, WS and Reliance. The jury assessed total damages of $940,000 and attributed fault as follows: 50% to WS, 25% to the employer, 5% to EIS, 20% to the plaintiff, and none to Reliance. Following reductions for the amounts of the settlements, the trial court entered judgment against WS for $604,178.87. *Lombardo*, 315 Ill. App. 3d at 118. Both WS and the plaintiff appealed. The appellate court reversed the judgment and remanded for a new trial based on WS's argument that the jury was exposed to a highly prejudicial document not admitted into evidence. *Lombardo*, 315 Ill. App. 3d at 122. Because the issue would arise again on remand, the appellate court addressed the plaintiff's argument, citing

*Blake*, that the settling defendants should not have been listed on the verdict form under section 2—1117. *Lombardo*, 315 Ill. App. 3d at 124.

The appellate court reached a conclusion somewhat different than *Blake*. The *Lombardo* court concluded that the settling defendants were properly listed on the verdict form because the "inclusion of nonparties and settling defendants on the verdict form helps protect the plaintiff's right to an appropriate attribution of his own fault, as well as protecting the defendants' interests in their right to contribution." *Lombardo*, 315 Ill. App. 3d at 125. Further, "[e]ven though the court should include the [employer] and other settling defendants on the verdict form, it should consider the fault of only those parties specified in section 2—1117 for purposes of determining joint liability." *Lombardo*, 315 Ill. App. 3d at 125.

So, if the 2003 amendment evinces the legislature's intent to acquiesce in the prior judicial construction of the statute, on what basis does the plurality presume acquiescence with the 1995 decision in *Blake* rather than the 2000 decision in *Lombardo*?

Third, the plurality cites the appellate court's decision in *Yoder v. Ferguson*, 381 Ill. App. 3d 353 (2008), as support for employing this canon. According to the plurality, the *Yoder* court "accept[ed] [the] argument, based on *Bruso*, that [the] legislature's failure to alter [the] relevant language of section 2—1117 in 2003 created the presumption that [the] legislature agreed with [the] 1995 interpretation of statute in *Blake*." 232 Ill. 2d at 380, citing *Yoder*, 381 Ill. App. 3d at 377-78. Reliance on *Yoder* is mere bootstrapping. *Yoder* invoked the acquiescence canon, citing *Bruso*, as authority for following *Blake*. Yet this court did not apply the canon in *Bruso* and, as noted above, *Bruso* provides no authority for applying the canon in these circumstances, where the

legislature was clearly acting in response to this court's recent decision in *Unzicker* rather than acquiescing to the appellate court's eight-year-old decision in *Blake*. *Yoder*, therefore, offers no authority for applying the acquiescence canon in this situation.

Fourth, the application of this canon of construction reveals the importance of making a careful determination of the threshold question of ambiguity. If the statutory language is truly ambiguous, then the acquiescence canon has a certain logic, especially if the judicial interpretation that is deemed to have been acquiesced to is a decision of the highest court in the jurisdiction. If, however, the statutory language is not ambiguous, the application of this and other canons of construction may obscure, rather than reveal, the intent of the enacting legislature. See K. Llewellyn, *Remarks on the Theory of Appellate Decision and the Rules or Canons About How Statutes Are to Be Construed*, 3 Vand. L. Rev. 395, 401 (1950) (opining that for every canon that supports a particular reading of a statute, there is a counter-canon that would support the opposite reading). In my opinion, we are most vulnerable to a legitimate accusation of "legislating from the bench" when we find ambiguity where there is none.

Yet even if I were to agree with the plurality that the phrase is ambiguous, I would have to take exception to reliance on the statements of Senator Cullerton as "additional support" for its conclusion. 232 Ill. 2d at 382. The senator's "informative" comments do not correspond to any recognized tool of statutory interpretation.

While we do employ legislative history as a tool of statutory construction when necessary, we must look to the committee reports, floor debates, and other legislative materials surrounding the original enactment for guidance as to the intent of the enacting legislature. A

member of a subsequent legislature who favors amending the existing statute is not an appropriate source of information as to the intent of the enacting legislature. I strongly object to the suggestion to the circuit and appellate courts that they should look to the content of floor debates in the current legislative session to determine the meaning of statutory language that has been on the books for decades.

In addition, the senator's comments are not a matter of which this court may take judicial notice. *Illinois Department of Healthcare & Family Services v. Warner*, 227 Ill. 2d 223, 240 (2008), quoting *People v. Davis*, 65 Ill. 2d 157, 161 (1976), quoting E. Cleary, McCormick on Evidence §330, at 763 (2d ed. 1972) ("[M]atters susceptible of judicial notice include facts 'capable of immediate and accurate demonstration by resort to easily accessible sources of indisputable accuracy' ").

Finally, the plurality mentions Senate Bill 1296, which was sponsored by Senator Cullerton and would have codified the result reached by the *Blake* court, but fails to mention House Bill 1894, which was filed two weeks later and would have entirely abrogated the doctrine of joint and several liability. Both of these bills remain pending in the House Rules Committee. I have no opinion on the merits of these two proposed pieces of legislation or on the likelihood that either will become law. I am convinced, however, that current legislative proceedings have no relevance to our interpretation of existing statutory law.

## CONCLUSION

Allocating fault among the plaintiff and all defendants sued by the plaintiff is not only required by the plain language of section 2—1117, it is entirely consistent with the legislative goal of protecting minimally responsible tortfeasors from excessive liability. *Unzicker*, 203 Ill. 2d at 78. The result reached by the plurality is inimical to these goals for at least three reasons.

First, if fault is allocated among a plaintiff and all of the defendants sued, the plaintiff may be more likely to be made whole because his own degree of fault may be reduced. For example, in the present case, the jury found United to be 65% responsible for the fatal accident and Ready to be 35% comparatively negligent. If fault were to be apportioned among Ready and all three of the defendants sued, it is entirely possible that the jury's allocation of some degree of fault to BMW and Midwest would reduce the degree of fault attributed to Ready. For example, if United were found to be 30% at fault, the other two defendants to be 45% at fault, and Ready 25% comparatively negligent, plaintiff would receive $9.56 million in damages instead of $8.137 million. Only if consideration of the fault of BMW and Midwest were to result in United's liability being set at less than 25% would this plaintiff not be made whole, because section 2—1117 would limit United's liability to its actual share. 735 ILCS 5/2—1117 (West 1998). Either or both of these results—a lesser share of liability for United or a lesser share of comparative liability for Ready—would be entirely consistent with the intent of the legislature.

Second, the plurality's reading invites future plaintiffs to reject reasonable settlement offers from minimally responsible defendants with "deep pockets" in an effort to keep such defendants in the case until judgment. Under the plurality's reading of section 2—1117, such a minimally responsible defendant will not be allowed to present evidence of other defendants' shares of fault or to have the jury apportion fault among all of the parties "who might have been responsible for the plaintiff's injuries." *Unzicker*, 203 Ill. 2d at 79. A defendant who is a mere 1% at fault for an injury will be liable for the entire amount of the judgment, less the amount of the settlements with more culpable defendants. Although such a result would fully compensate the injured plaintiff,

it would do so by imposing excessive liability on a minimally responsible defendant. Such a result is not consistent with the public policy of this state as expressed by the legislature.

Third, under the plurality's holding, a defendant's share of liability will be determined only if that defendant has not reached a good-faith settlement with the plaintiff at the time judgment is entered. 232 Ill. 2d at 385. Such a rule is unworkable in practice because it is not uncommon for one of several defendants to reach a settlement with the plaintiff during trial, or even while the jury is deliberating. Under the plurality's rule, if there are three defendants in the case when the trial commences, but one settles during trial, after evidence of that defendant's fault has been introduced, must the trial start over? What if another defendant settles during jury deliberations, after the jury has been instructed on the allocation of fault? Must a mistrial be declared?

In sum, the plain language employed in section 2—1117 reflects the balance struck by the legislature between the potentially competing goals of full compensation to injured plaintiffs and fair imposition of liability upon defendants. In negligence and product liability actions involving personal injury or death or physical damage to property, a defendant will be jointly and severally liable only if his fault is determined to be 25% or more of the total fault. When attributing total fault, the trier of fact is to consider the fault of "the plaintiff, the defendants sued by the plaintiff, and any third party defendants who could have been sued by the plaintiff." 735 ILCS 5/2—1117 (West 1994).

I would hold that the phrase "defendants sued by the plaintiff" in section 2—1117 unambiguously refers to all three defendants sued by plaintiff and I would, therefore, affirm the judgment of the appellate court.

JUSTICE KARMEIER joins in this dissent.